Secretary of the Interior, Mr. Smith for the appellants, Ms. Kline for the appellees. Mr. Smith, good morning. If it pleases the Court, David Smith for the appellants.   After three years of litigation, the late Eloise Cobell settled this landmark case. She couldn't have kept that case going for 15 years without the assistance of foundations that paid for the litigation expenses. She couldn't recover those expenses without petitioning the Court for them pursuant to the settlement agreement. The District Court ruled that those expenses weren't recoverable because, in the Court's words, they were paid by third parties, foundations, and the Court had no authority to award them. That's what is at the heart of this appeal. What does the settlement agreement say? What does the Claims Resolution Act say? That's a question of law for this Court. Before I address the merits, however, I'd like to address the jurisdictional issue that the Court raised on Friday with the Court's permission. As I understand it, the question is whether this Court has, under 28 U.S.C. 1291, jurisdiction over this appeal where the Court entered a final order with respect to class representative expenses, pre-judgment expenses, but there remain two outstanding issues. Number one, where there remained an issue about what the — where the Court entered a final order with respect to class counsel attorneys' fees, but there remained an issue regarding the allocation of a portion of those fees between some of those counsel. And secondly, there remains an issue regarding the possibility of post-settlement expenses and fees. We believe under these circumstances, Your Honors, that this Court does have jurisdiction under 1291. The reasons are this, that the Court below did enter a final order with respect to the class representative fees. It was a pre-settlement, pre-judgment order. It was for a specific amount, and that to delay this particular order as delaying any order of this nature until the end of the case would propose a — could delay the consideration of this issue for years, if not a decade, and pose difficulties with respect to the administration of the settlement. With respect to the dispute concerning pre-settlement fees, where you still have a fight about, I think, one attorney, an organization, and how much they get. Yes. How much longer is that going to take to resolve? I don't know the answer to that, Your Honor. Will someone be able to appeal from that determination? There is a hearing on that issue. Of course, it's been pending now since 2009, as this issue has been pending. But the Court has set a hearing on that for, I believe, the 30th of this month. We don't know. So it could take a matter of years. I don't know the answer to that question. Do you have authority for the ability to treat as final a time-cabined attorney's fee award that is not itself within that time period? Final? So that I'm talking about the pre-settlement time period. So with respect to that time period, you don't have a final judgment in that there's still a fight over how much fees each person gets within this pool. With respect to the – are you talking about the class counsel fees? I think the precedent from this circuit has been that where there is a final order with respect to the liability and the amount of the fees, that that is in appealable order. And the case that located was a Gilda Marks, Inc. v. Wildwood, Exercise, Inc., 85F3-675, said it was following the majority of circuits that said where the Court has determined both liability and damages at that point in time, at least with respect to class counsel fees and expenses, it constituted an appealable order. It created something of the nature of a bright-line rule. The Court cited us to the case of Pickford v. Venneman. That case is unlike this one as it dealt with post-settlement counsel fees. It was an advance on fees. It was not a determined amount, not for a specific period of time. The Court determined under those circumstances it was not an appealable order. It distinguished the Ninth Circuit's decision in Gates v. Rowland. In Gates it was a specific amount. The Court determined it was a specific amount for a specific period under the terms of a consent agreement, a settlement agreement. And the Court noted the problems that would be caused by delaying the decision to the end of the case. That is also a little bit different than our situation, closer to it, but here we're dealing with pre-settlement fees. The closest case I could find was a case called Interfaith Community Organization v. Honeywell International, 426F3-694, from the Third Circuit, 2005. In that case it was a RCRA case, Resource Conservation Recovery Act case, where there was a trial, an injunction entered, judgment granting the injunction, but RCRA also provided for pre-judgment and post-judgment fees. The Court awarded pre-judgment fees. Appeal was taken from that order. The question was, was that an appealable order under 1291, given the fact that the Court could award post-judgment fees, and in fact was awarding post-judgment fees because of the monitoring of the settlement. The Court, relying on the Gates case, which this Court cited in Pigford, said, yes, it's for a finite period of time, pre-settlement. Yes, it's a specific amount. The Court wasn't going to change the amount. And the Court noted that, looking at guidance from the Supreme Court, that 1291 has to be looked at practically rather than technically, that this decision on the merits could be delayed for perhaps a decade because of the amount of time it would take to, in fact, to finalize an administration of a Does this case have the same type of ongoing monitoring obligations as those other cases, even with respect to the post-settlement fees? Or is the post-settlement process, I mean, how much longer is the settlement process itself expected to take, put aside these fee disputes? Your Honor, that case is very analogous, and the Court noted that in complex litigation that often the post-settlement period is quite long. It's been five years now in post-settlement, and we've made great progress on the administration of the settlement, but I can't tell you when it will be finalized. We have half a million individuals to distribute money to. We're very close. We've distributed in one class 92 percent of the individuals, another class roughly 86 percent. So we're making a great deal of progress, given that we started with no addresses for about 80 percent of those individuals. So it's been a long five years. Which is 92 and which is 86? Under the first class of historical, and I realize this is not on the record, but in the historical accounting class, the first class, we were at roughly 92 percent. With respect to the second class, the trust administration class, we started distributions in September of last year, and we've now identified and began distributions to about 86 percent of those individuals. There's still about 70,000 individuals out there, as my recollection, that we have not identified, either because they're unaware about some known list or because they're estates, they passed away. And that's the hardest part of the settlement, is identifying the individual's heirs who have passed away. I can't tell the court how long that might take until it's finalized. And on the merits, I just wanted to ask a practical question. If these fees for third parties were to be awarded now, whose pocket would they come out of? Where would they come from? Because my understanding is that the trust account class's amount of their historic and all these fees and stuff are paid, and if folks have already been, if 86 percent of the trust folks have already been paid, what happens? There has been a reserve for expenses, and also there is... There's a reserve for these? Not for these specific expenses, a general for class administration expenses, and there is also an amount, I'm sure at some point, that we will not be able to identify individuals. Under the terms of the settlement agreement, before it goes to the SIPRE, which would be the scholarship fund, the Eloise Philbell Scholarship Fund, the expenses would come out of that. There's always the possibility, Your Honor, that we find everybody and there's no money left. That is certainly always a possibility. And then where does this money come from? The scholarship fund would be a last resort. But if all the money is gone, there would be nothing for the scholarship fund, except which comes out of a different fund, the land consolidation fund. Right, so if all the money is distributed, 100 percent for the store class and 100 percent for the trust class, I'm sorry, I still don't understand, where then does your 8, 10, 15 percent come from? If 100 percent is distributed, we identify everybody. And it would only come if there were any remaining funds held back from expenses. And I believe about $40 million was held back to cover post-settlement expenses. But this isn't a post-settlement expense. This is a pre-settlement expense. Can this come out of the post-settlement expenses if it's a pre-settlement cost? It would have to be up to the district court, I believe, if it could come out of that. So there is actually no money. You're not going to take money back out of the mouths of people that have already been given their payments? No, absolutely not. Is it going to reduce the amount that's available for the remaining 14 percent of the trust class, if you were to get paid? Isn't that where the agreement says this money comes out of? The money comes out of the common fund, it does. Because they only get a prorated share of what's, the trust class only gets a prorated share, so in fact it is going to diminish what folks in the trust account class can obtain. Or at least 14 percent of the people in the trust account could obtain. That amount of money has already been allocated and has been distributed. And so it would only come out of what is not distributed or what is left for expenses. Let me make sure I understand this. So you cannot say that, or maybe you can, but it sounds like you cannot say that the money available for us can have no effect on the outstanding disputes that remain with regard to, you mentioned two types of fees. Is that correct? It can affect what's left for the members of the class, is that right? But not be affected by, nor affect the two outstanding matters that you identified at the outset of your argument. Right. It should have no effect on the amount that has been set aside for the attorneys. That has been set aside in a separate amount. And they're arguing in apartheid on that. Right. Exactly. Or about a fixed sum that's gone. Segregated out. So nothing that happens here can affect that. It can affect the corpus available to the members of the class. The way it would not, the class members come first in this analysis. In the allocation, when the distribution was made in September 2014, it was made assuming that it took out the amount the court had awarded for class counsel fees. It took out the amount for post-settlement fees and expenses that was provided for in the settlement agreement. It took out an allocated amount for expenses. Does one of those include the $13 million that's been disposed of? Yeah. It does. But with respect to your class members come first point, so that's between trust class members and these third party expenses? That's what you're saying? Class members come first? Right. And the distribution has already been made based on those numbers. The distribution began based on those numbers. So is your claim even ripe for these costs? Because the more they collect, the less is left for you guys to get for these costs, right? I mean, if 100% of the trust class is identified, there's nothing left to pay these costs for anyhow. Unless you think the district court is going to let you take it out of the post-settlement fund, which would require a whole other district court proceeding. No. In this argument, we actually asked at one point whether the court would consider allowing these funds to be held back. And the district court said no, was convinced by actually the defendant's argument that there should be enough money left over from undisbursed amounts. I thought the district court's answer was you don't get paid for these on that order pending this appeal. And the district court actually said no. The defendant's argument, the government's argument was there is still a lot of money out there, a lot of money that most likely will never be distributed. And there's more than enough to cover the expenses under the terms of the settlement agreement. And that's pre-settlement money, not post-settlement money. Right. And what would happen if you got it and then it turned out you got 100 percent of the trust people? Do you get this paycheck and then it turns out five years from now 100 percent of the trust classes shown up to get paid? I'm just not understanding something about the math here. Right. If in fact, you know, and if we find in fact 100 percent of the trust people, they get paid, your Honor is exactly right. The only way that this $12 million can be paid is if there's enough money left over in the expenses that have been allocated. And that won't be known for a long, long time. That's correct. So this won't get paid right away. You just want the legal determination of your right to it now, but you wouldn't actually get the check until this whole process is done? At the stage we are right now, I think that's correct. It does seem odd then to do the appeal now. Your Honor, because this is the problem that's created. I think the it's important for these issues to be known at the outset, just like class counsel fees and expenses and just like class representative expenses. Because if we can't appeal these orders at this point in time and they're delayed to the end of the case, we really never know how much money there is to distribute. And so we need those determinations at the outset before the determination is made. So as you have pointed out, one of the difficulties we face is we've got a trust administration class and you have to determine how many class members you have and you have to determine how much money you have. How can you make that determination if there is a question about what the class counsel fees and expenses are and what the class representative incentive fees or expenses are, unless those determinations are made early on in the case and not at the end of the administration. That's why an early determination on that is necessary and I can't wait to the end. All right. See I've We'll give you a couple minutes to reply. Okay. Thank you. Ms. Klein. May I please the court. Elisa Klein for the government. Regarding jurisdiction, I'll try to help explain the distinct disputes about the attorney's fees and the extent to which there's overlap with the expenses that are an issue on this appeal. The incentive awards are a separate award. That's the 2.5 million that the district court awarded and separately there was the 99 million attorney's fees, expenses and costs award. About 85.5 million was already distributed to class counsel. The 13 plus million that's held in escrow that I believe Judge Ginsburg was referring to. That fight really has nothing to do with this appeal. That was original class counsel, Mark Brown and Native American Rights Fund, who were saying they're entitled to some of the attorney's fees. This is, you know, it's been referred to mediation. We're not involved in that dispute and we don't know anything about when it would end. But there is a relationship between a different fight over attorney's fees and the expenses that are an issue here. And the clearest way to see it is to look at the Lannan Foundation separate lawsuit. It's a related case, but it's not a filing in expenses. The Lannan lawsuit said we made recoverable grants to Blackfeet and we were, you know, our right was to be reimbursed out of attorney's fees. So they're basically, this is the 85.5 million that's already been distributed and it's also before Judge Hogan, but it's a different type of dispute. And that's where they're saying, you know, this was our contribution. We have essentially just a contractual right against Kilpatrick and Dennis Jingold and, you know, the four and a half million dollars, you know, we're entitled to get that out of the 85.5 million that the lawyers already have. The things we don't know. The dispute with the Lannan Foundation was filed earlier June, I think it was May of 2014, on terms that are not public. We do not know the terms and we do not know whether this appeal, which I believe was filed a month later, was a condition of the settlement. Because, again, the money that's an issue that they're claiming. So in this appeal, what happened was the four individual class representatives filed a petition. They asked for incentive awards, including expenses. The district court's first ruling was, yes, I'm giving you the incentive awards. That's the 2.5 million. I'm not giving you this extra 10 million in expenses. Those aren't your expenses. They're the expenses of groups like Lannan, Blackfeet, third party organizations, and I'm not giving you those. Then there was the fairness appeal, in which the fairness of the settlement was challenged. The government defended the fairness of the settlement, as did the plaintiffs, in the suit that was brought by Kimberly Craven. And this court, in affirming the fairness of the settlement, relied in part on the fact that the district court had awarded only 2.5 million in that the main plaintiffs had personally incurred. It wasn't their expenses. But the reconsideration motion that had been filed, but not yet determined, that was when the plaintiffs' lawyers first said, actually, Eloise Cobell personally guaranteed these debts, and she and the other class members will be thrust into a precarious financial situation if she personally, or perhaps the four of them, are not given this 10 million. The number changed. I'm just going to say 10 million. $10 million given to them personally. And they said there were assignments made, to which our response was, well, we're limited because they haven't provided the assignments. The only one we have shows that, no, the assignment says if Blackfeet or other third parties have any right to recover at all, it's out of the attorney's fees plot. And the district court, I don't know if you saw on the footnote, the district court said, and also I have before me the Lannan Foundation suit, in which Lannan has put in all of its own assignments, and they all say the same thing, which is we have a claim against the attorney's fees plot. And so this is why at the end of the day, when Judge Hogan had before the court all of the relevant information, Judge Hogan said, this money doesn't come out of the common fund, and it doesn't go to Ms. Cobell's estate or to the three other individuals. To the extent there are third party organizations out there that actually have the attorney's fees plot, and this is not the escrowed 13 million, this is the 85.5 million that has already been distributed to class council. And one additional thing, so although Kilpatrick and the Lannan Foundation settled on undisclosed terms, Dennis Jingle is still a defendant. We don't know what will happen in that, so there's a claim that the Lannan Foundation is currently making against Dennis Jingle personally, and that's the subject of ongoing litigation. So the bottom line on appellate jurisdiction, I think probably this court does have appellate jurisdiction to address the district court's rulings on the incentive awards, because the district court has no reason to revisit those rulings. So ruling one was these are not your expenses, they're expenses of third parties. Ruling two, informed by more information over the several years that passed, was what I see is that these are actually, to the extent they're reimbursable, they're claims against the monies that have been distributed to Kilpatrick and Dennis Jingle, and if you want recovery, that's where you look. And again, if the court wants a description of this type of dispute, the Lannan Foundation complaint is not exhaustive, but it's illustrative of what we're talking about. How does the fact that the settlement agreement in Section M forbade assignments factor in at all? Now, I believe that was it forbade assignments of the underlying claims, so your right to distribution of the thousand dollars for the historical accounting money. I do not believe that it prevented, essentially, fights to divvy up the $99 million attorney's fees. I would be surprised if the government, if there would have been any such provision, because it was understood that there were going to be disputes about exactly who gets some of that money. Well, this $2.5 million in the incentive award and the paragraph K2 that says they're entitled to incentive awards, including expenses and costs. Of the class representatives. Right. Well, that's certainly Mrs. Cobell and the others. It's not? No, but this is why they came back and said, yes, these are her personal expenses. She guaranteed them, but that is not true. Let me just finish my question. In the $2.5 million that's already been awarded as incentive award, what portion, if any, of that is expenses and costs, and what were they? What the district court said was, I know that Mrs. Cobell spent $390,000 of her own money. I'm not making a separate award of expenses for that. I've taken that into account in the general sense by giving her $2 million. And there was, I don't believe, any claim for costs personally expended by the three other class members. So the $2.5 million is strictly what I would call a bonus. Yes. I mean, it isn't any entitled to, leaving aside whether these are recoverable expenses or costs, why aren't they entitled, in addition to the bonus, to expenses and costs that you recognize as expenses and costs? Okay, so two answers. First is that, in the language of K2, they're entitled to file a petition for incentive awards, including expenses and costs of the class representatives. So that is why they tried to say these were Mrs. Cobell's personal expenses, or at least that she guaranteed the debts that she would have to repay them. But that was not true. So when the district court, in denying reconsideration, rejected that claim, the court also said that it was waived. But more important, it is not true. She has, and in fact, this is in the Kilpatrick complaint as well. What is not true? What is not true? These are not Mrs. Cobell's personal expenses. These were just grants made. Well, these were the loans or grants, whatever, from other entities. Not to her personally, though. Oh, I know that. I know that. So you're reading class representatives as personal expenses and costs of the class representatives, as personal expenses and costs? Yes, and that's because there was a separate $99 million award that was called in the settlement agreement, attorneys' fees, expenses, and costs. For class counsel? Well, again, we're circling back because these are the debts of class counsel. Again, if you look, the claims are that class counsel was paid $99.5 million when they really were supposed to use part of that to reimburse Blackfeet and Lannan and Otto Bremer and Pricewaterhouse, all these third parties. So that is why Lannan Foundation is suing the lawyers. And in the complaint, they say the lawyers told them, go after Mrs. Cobell's estate, and they basically said, that's outrageous. Our claim is against the Lannan Foundation, and we are not aware of any other public claims that were made against the attorneys' fees fund. As far as I know, there is absolutely no evidence of anyone trying to recover against either Mrs. Cobell's estate or personally against the three class representatives. The $2.5 million already paid is strictly bonus, and there is this $370,000 that I think everyone agrees were personal expenses of Mrs. Cobell. Why isn't, I mean, how can the district court both say both that this is strictly bonus, which is what I think I heard you say, and then say, but you don't get any expense, but you can get your expenses out of that bonus as well? It's the meaning of including as used here. It's basically saying, district court, you have absolute discretion to decide whether to give Mrs. Cobell any incentive award. And you did. You gave $2.5. Well, $2 million. $2 million, that includes, takes into account the fact that she spent $390,000. And the court said repeatedly, I understand that. I mean, the court could have said, okay, I'll give her $1.6 million as bonus and $390,000 as expenses, but it wasn't required to do that. It's all, this was entirely up to the district court's discretion. Okay, so then are you wrong when you say the $2 million to Mrs. Cobell was not strictly bonus? It included the $370,000 personal expenses? Yes, included in the sense of, as the district court put it, took into account. Okay. So, just on the merits, the question is, did the district court abuse its discretion at the end when looking at everything? In the Lanham case, is the defense that we don't owe you this money? Mrs. Cobell does? The Lanham complaint, again, this has now settled with Bill Patrick Stockton, and so... Was there ever an answer or any defense filing whatsoever so that we would know what their position was? I believe there was. Is this question fully answered as to who's responsible for this? I don't, no, I don't think it was conclusively answered, so the Lanham Foundation, despite receiving millions of dollars from the attorney's fees award, defendants, meaning the attorneys, have refused to repay the grants as set forth in the grant agreements. Instead, they've taken the position that contrary to the clear terms of the agreements, the Lanham Foundation has no right to be repaid from the $99 million attorney's fees award, and instead may pursue repayment only from the personal assets of the class representatives, or in the case of Ms. Cobell, who passed away in October 2011, her estate. I do not believe that opposing counsel is sticking with that position. I believe if opposing counsel is asked, did Ms. Cobell put herself personally at risk? Is she personally indebted? Even though that is what they argued in district court, they haven't renewed that report. It would be a very big claim to make if it's not accurate, and I don't hear them to be making it anymore. I think the court was supposed to decide these issues based on controlling law, so what does controlling law mean? Consistent with controlling law, though. What's controlling law? Well, again, here it's hard to know exactly what that could mean, because ordinarily to get to this point, the part of the case that the plaintiffs won, 2001 and prior, that was the subject of an interim EJRA award of $7 million, plus some additional money related to discovery disputes. That was paid long ago, and that's not what ... Now we're just talking about expenses, for example, associated with the 2007 trial, and all of the relief ordered by the district court after 2001 was reversed by this court, so invocations of controlling law and unjust enrichment, equitable doctrines, they don't map on. What we do have are settlement terms that are on point. The district court was correct to say ... The settlement told the district court to decide the rest of this dispute based on controlling law, and it's your settlement. That's in addition to the specific terms, which said, here's what the class ... Four human beings can get. They can get incentive awards in your discretion, and those can take into account their expenditures, the expenses of the class representatives, and then separately you can award, if it wasn't literally up to $99 million, but there couldn't be an appeal if the award was below $99 million, of attorney's fees, expenses, and costs, and those two provisions, and third, the paragraph M said no third-party beneficiaries, no rights or remedies in third parties, and so none of these third parties could come and say, we want to be paid out of the common fund, but that's effectively the relief that's being sought here. It's diminish the money that would be available, either for distribution to the trust administration class, or to the extent they can't be located, which is a distinct possibility, that money under the settlement agreement goes to the Indian Education Scholarship Fund, because the whole purpose was to be benefiting Native Americans generally. That was the design of the settlement. So with respect to their position that they can't even know if there will be any money left to pay them until this whole process is over, how does that affect finality now? Well, again, the district court issued a definitive ruling saying, I'm not paying you. I suppose it's possible that there could be zero money left over, but my understanding is, the same way Interior had difficulty locating the heirs, because of the way these accounts were passed on over time, I believe there may be some and that's why Congress approved a settlement that said the excess money goes to the Indian Education Fund. So I can't predict exactly how much that will be, but it was assumed that not everyone would be identified and some money would end up in the scholarship fund. And so if they were to prevail, that money would come out of that scholarship fund? Yeah, it can't come out of the FISC, that's clear. And so one way or another, it's reducing the pro-rata distribution to trust administration class members, or it's coming out of the scholarship fund. And one last point I meant to make, though I do not believe it bears on the issues before the court, is that since the court asked about post-settlement fees, there is a pending petition for about $11.2 million in post-settlement fees. That has been pending for several years. It has not yet been acted on. But what is the cap on the post, isn't it $10 million? $12 million. And it was styled as interim, so there's potentially another request. Normally when you said post-settlement dispute doesn't interfere with finality, it's when it looked like there's going to be ongoing monitoring for the next 10, 20, 30, 40, 50 years. And that doesn't sound like that's the case. I agree. I'm not suggesting that the post-settlement dispute has any bearing on finality. It's just since the court asked, I just wanted to answer that question. The district court said it was without authority to make the award. Case law looks the other direction. The district court was interpreting a settlement agreement that had two distinct types of award. And what the court said, both in its first ruling and then again in the denial of reconsideration, was I am not awarding you four individuals personally reimbursement for expenses that you didn't pay and you don't owe. And then on reconsideration said you're claiming you do owe it, but that's not true. I've looked at the assignments to the extent that they've been provided to me, and what they show consistently is if anyone owes the money, it's the lawyers. It's the other pot of money, the $99 million. So you don't think the district court said or acted under the view that it could not lawfully recompense the third parties without this liability by the main claimants? I believe interpreting the settlement agreement in the first ruling does not give me authority, even taking into account controlling law, to just take money out of the common fund for third parties. But then by reconsideration, when the court had a lot more information, this I believe is where the discussion came in and the court essentially said I'm not paying any money about these expenses to the four named plaintiffs because I see that to the best of my ability. So you're saying the district court never relied upon the view that quite apart from the settlement agreement, that the controlling law precluded it? No, Your Honor. And again, controlling law, if you think about the normal case where imagine we're just the defendant and there's an attempt on behalf of the class as a whole to get litigation expenses from us. That's quite different from four individuals attempting to get third party expenses taken away from the 500,000 absent class members. That's why this was an issue in the fairness hearing and on this appeal. That's the reason this court emphasized that Kimberly Craven says 13 million. That's just the request. The district court only gave them 2.5 million. It's a lot of money relative to what the class got. Why was the district court averting then to Rule 54? Why did the district court avert to Rule 54? I thought it was in the course of saying it was without authority. Well, Rule 54, it was, oh no, that I believe was just because it was interlocutory because of the sequence. There was the petition, the petition for class representative incentive awards and then the court said no in the fairness hearing. And then a week later there was a reconsideration motion where that's where they said the class, you know, Eloise Cobell is personally liable. Then there was the entry of final judgment and then only a few years later the denial of the reconsideration motion. I think the court was just making a procedural point, but it was quite clear from the arguments the government was making was that there is not a basis under the settlement agreement as ratified by Congress to give Eloise Cobell or a class representative incentive award. And that, you know, they didn't know, unless the court has further questions. So here's something from the district court's opinion. The court did not take a position on the merits of this issue. Do you know what I'm referring to? I believe. I'll go back. In the motion for reconsideration, the plaintiffs argued that the settlement agreement provided for the payment of costs and expenses, quote, wholly independent of and in addition to expenses and costs of class counsel. That's the district court quote in the reconsideration. The court need not take a position on the merits of this issue because it could have been raised before the court ruled on the incentive award petition and therefore is not a proper subject of the motion for reconsideration. I understand the quote and the question. I took the original briefing, the petition that the class representatives filed and our response saying these aren't your expenses to be briefing on that issue. So I don't know. And I believe it could have been raised before. I believe it was raised. It's not a subject of a reconsideration. I know. I believe that. And I'm not going to reach it on the merits. I don't understand that. I know what you're talking about and I don't understand the sentence because as we understood ruling number one, it was these are not your personal expenses and I'm not taking money away from the class as a whole to give to you for expenses that aren't yours. And that is, I believe, what Your Honor is describing. That would be, you know, saying that we, four of us can get $10 million in expenses that weren't our personal expenses. Are you referring that to the reconsideration or the original? Both. I don't understand that sentence in the denial of I can see why the district court might have been confused because the terminology that the plaintiffs used, they would say Ms. Cobell incurred, I believe meaning, not incurred personally, but perhaps was involved in grants by third parties to other organizations. But I don't actually have a satisfying explanation for why the district court didn't think it had already addressed that issue because that's what we understand the first ruling to be. We said these aren't your expenses and the court said I'm not awarding them. And again, this court on the appeal also said the district court rejected that request because they were not directly incurred by the class representatives. So I believe that's how this court understood it. I also believe that's how it was described in the reconsideration. It's there. No, I understand. And if it suggests that the district court thought it was without legal authority as opposed to contractual authorization, then perhaps it ought to reconsider that. It would have been correct because again, the settlement agreement, there are two types of awards. One is incentive awards for four human beings and that can include their personal expenses because otherwise there would be no justification to be taking money away from the class as a whole and giving it to these four people. I mean, that would just effectively be a windfall and one that comes at the expense of the class as a whole. I just thought that was the reason for the court in its discretion not to make them. That's not what you just said. It doesn't reflect on its power. No, Your Honor, I disagree. It's the reason that the settlement agreement had two separate types of awards. One, which was for the, and this was a limit on the authority. The district court could give bonuses, incentive awards, taking into account personal expenses of Ms. Cobell or the other class members. And that happened to the district court's authority. We do not believe the district court could have said, and there are lots and lots of third parties that have unpaid debts and I'm going to pay Ms. Cobell or her estate or the other three representatives millions of dollars on account of those third party organizations. So if we read the, if the court were to read the settlement agreement differently than you did, it's not foreclosing this possibility. Then it would follow, I guess, that the district court would have to take that into account, revisit the issue and decide understanding that it has discretion and wide discretion. If the court reads the reconsideration order as a whole to rest on a misunderstanding. I think that if you look at the reconsideration order as a whole and understand that Judge Hogan knew full well that these were unpaid lawyer bills and to the extent there were valid claims, they were claims against the attorney's fund. The court said quite clearly and repeatedly, if you want to get recovery, third party organizations, you look to the attorney's fees plot. And that is clearly within the court's discretion. That's its reading of the settlement agreement. No, no, that's a, I believe that was also saying I've looked at the nature of these claims and they are on their face, claims against the attorney's fees award. And to the extent they're valid, then I'm not taking this away from the class as a whole. I'm not going to deplete the common fund because I see that there are potential claims against the attorney's fees award. I believe that was an exercise of discretion. All right. Thank you. Does Mr. Smith have any time left? Okay. Why don't you take a minute? So who's on the hook? Who's personally liable for these expenses? The common fund is responsible for these expenses. And the reason is because that's what the common fund didn't sign, didn't loan out the money or didn't, didn't obtain a loan of this money. Right. But, uh, but Eloise Cobell, uh, spent 15 years raising this money, uh, and raising it from foundations. And she's the one who, uh, raised the money for the litigation expenses and set up the black. So is she personally, is her estate personally liable? No, her estate is not personally liable. If it doesn't come out, if it doesn't get paid out of the common fund, who's going to have to pay it, her estate or the attorneys? Your Honor, uh, her estate is not responsible in the way I read. And I have the same benefit of the record as, as you do. As I read these documents, her, her personal liability is limited to funds that actually come into her possession. And these Lannan documents, uh, this, this... Her personal liability so they can get all 2 million? Only to the extent they relate to attorney's fees and expense, attorney's fees and expenses. Her incentive fee had nothing to do with attorney's fees and expenses as, as the lower court found. So in, in the Lannan, uh, agreement, and this relates to only part of the, uh, the expenses, the roughly $4 million Lannan fee, uh, expenses. Uh, as I understand it, uh, Mr. Jingold, uh, and Eloise, uh, uh, Ms. Cobell, uh, signed these agreements, uh, and they, uh, and provided a, something of the nature of a security interest, uh, for, for Lannan. Uh, and... And it changed with various agreements, and, and, uh, they're, they're at the various places in the records. In some, some respects, it was for specific expenses, such as accounting expenses. Uh, in some respects, it was, uh, there, there was no security agreement, uh, at all. Uh, and, um... So if you lose your common fund argument, the money comes out of Ms. Cobell's estate? No, I, I mean, there is a out of his attorney's fees. Out of his attorney's fees. That's correct. Um, the, the Lannan agreement, um, uh, it doesn't change, however, what the settlement agreement says, and it doesn't change what the, what the Claims Resolution Act says. And it's, in fact, consistent with it. And, and that's part of the reason, uh, uh, why it's, it's, it's, uh, phrased the way it is. And, and one thing I want to emphasize is everybody understood, uh, going in that it was Eloise who had raised this money from foundations, that these foundations were paying these litigation expenses. There was never any question about that. Uh, if, uh, you look at the record at JA 1421, note 15, the government acknowledges that early on in this litigation, they were aware that foundations were Again, JA 1546, affidavit from a former class counsel, Thaddeus Holt. Uh, at the time that, this is January, uh, of 1997, at the time of class certification, he had to document where the payments were coming from. He filed an affidavit saying that Ms. Cobell was raising funds for these expenses for litigation from foundations. So the government was Well, but foundations ordinarily make grants and don't expect to recover them later on. Right. The government acknowledged in, in their, in footnote 15 that they knew from the outset that some of these were recoverable. Uh, and, and that's in fact what some of these, uh, in fact were. You know, whether they have to be paid back or not, I don't think is, uh, uh, is the issue. Uh, and, uh, Eloise's personal liability, whether she has to pay him back. Uh, third parties who pay expenses should be reimbursed. Uh, if, uh, someone is, uh, in, in form of papyrus, uh, and has to rely on a benefactor to, to pay their expenses, uh, third parties won't contract with the plaintiff. They'll only contract with the third party who has, has, has money. If we dig deep enough, will we be able to determine how much of the money loaned by Blackfeet, the others, went to attorney's fees versus accountants versus other expenses, travel for the, uh, class representatives and so forth? Will we be able to, to, to know of this 8 to 10 million that's still outstanding, how much is attorney's fees, how much is other litigation expenses? As I understand it, none of the, of the foundation money went to attorney's fees. That's what I thought. Right. Yeah. There was a provision in there that none, none could go to attorney's fees. Uh, the, the argument that the, the settlement agreement says this money should go to, uh, attorney's fees is, is simply wrong. Uh, and that's why you have two complementary, uh, sections in here. You have the provision in J1 and 2 regarding attorney's fees that says the class counsel can apply for fees and expenses. Uh, and it, it, and at the same time there is a separate document signed the exact same date, December 7, 2009, a document entitled agreement on attorney's fees and expenses signed with the government that defined exactly what those expenses were. And it's, uh, in the record at 1433 and it's defined as the expenses that were incurred by class counsel. If you look at K1 and 2 regarding the class representative's expenses, it doesn't have that kind of language. The government hangs their hat on the word of, but that's not, uh, you, it's simply taken out of context because it's specifically those expenses that were quote, not paid for by class counsel. Uh, and a much broader reading, not those that were, um, uh, simply not personally incurred by Ms. Covell. Uh, so, um. Okay. You need to wind it up. Okay. I'm sorry. You have another point to make. You need to wind it up. Okay. Okay. And finally, I think it's consistent with, uh, controlling law. This court has long held that, uh, expenses should come out of the common fund because, uh, of, uh, principles of equity that all class members should share in the expenses of the district court. Was that for the district court that you said? That's correct, Your Honor. And here the district court never had an opportunity to do it because it determined that. In no event would we make that decision. What's that? In no event would we resolve that. That's correct. Okay. Let's not talk about it. Thank you, Your Honor. I appreciate it.
judges: Henderson, Millett, Ginsburg